UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BARNEGAT VILLAGE SQUARE, LLC.

    Plaintiff,

v.

SAFEWAY, INC., et al.

    Defendants.

Civil Action No.: 13-cv-623 (PGS)

MEMORANDUM AND ORDER

SHERIDAN, U.S.D.J.

    This matter comes before the Court by way of Defendants' Motion [ECF No. 14] to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The instant action arises out of a lease dispute between Plaintiff Barnegat Village Square (BVS) (landlord) and Safeway, Inc. and other prior lessees whereby Plaintiff seeks to recover sublet proceeds that are due in addition to rent pursuant to the "pass-through" provision (Section 11) of the lease agreement. In response, Defendants move to dismiss the action, pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Defendants do not owe BVS any sublet payments, and alternatively that the statute of limitations operates to partially bar the action. Having read the submissions of the parties, and heard argument on a telephonic hearing on October 16, 2013, the motion to dismiss is granted in part denied in part.

I.

    The Complaint alleges that a grocery store was constructed in Barnegat Village Square Shopping Center, located in Barnegat, New Jersey. The original lease was signed in October, 1997 of that year; and subsequently the lease was assigned to Genuardi's Family Market in September, 1998. Thereafter, the lease was assigned to Safeway in 2001.

    In 1999, while Genuardi's was the tenant, Genuardi's signed an agreement entitled "Bank License Agreement" with International Banking Technologies, Inc. (IBT) whereby Genuardi's granted

IBT a license to install and operate banking facilities inside six Genuardi's supermarkets[1], including the grocery store at Barnegat Village Square.

About twelve years after the implementation of the "Bank License Agreement," BVS brought this suit to collect monies due under the "pass-through" provision of the lease because, as Plaintiff alleges, the "Bank License Agreement" is a "sublet" requiring an additional rental payment. Defendants argue that Bank License Agreement is a license, and under the terms of the lease, such a license is permitted without approval or payment to the landlord.

A review of the applicable provisions of the lease and the Bank License Agreement is appropriate in order to evaluate the issue. Section 11 (pass-through provision) of the lease is entitled "Assignment and Subletting." Section 11 permits subletting and licensing under certain conditions. It reads in part:

> 11.1. In General. Except as expressly permitted pursuant to this Section 11, Tenant shall not, without prior written consent of the Landlord, which consent shall not be unreasonably withheld, conditioned or delayed, assign this Lease or any interest herein, or sublet the Premises or any part thereof. Any of the foregoing acts, without such consent shall be void, and shall, at the option of Landlord constitute an event of default under this Lease. Notwithstanding the foregoing, Tenant shall have the right during the term of this Lease, without Landlord's consent, to sublet or license all or a portion of the Premises or to assign this Lease, either in whole or in part, for any use permitted under Section 7.1 hereof, but no such subletting or assignment shall release Tenant from any of the obligations under the terms of this Lease.

This section permits the tenant "to sublet <u>or license</u> all or a portion of the premises" so long as it is a "use permitted under Section 7.1". Defendants contend that Section 7 authorizes the tenant to enter into the Bank License Agreement with IBT without incurring additional rental payments. For instance, section 7.1 reads in part "the Leased Premises may be used and occupied for . . . the conduct of a retail grocery or any related use, including without limitation . . . *a bank* . . . " (emphasis added).

---

1     When assessing the sufficiency of the pleadings, the Court's review is not limited to the contents of the complaint. The Court may also consider the underlying documents that form the basis of a claim. *Lum v. Bank of America*, 361 F.3d 217, 222 n. (3d Cir. 2004). "A document forms the basis of a claim if the document is integral to or explicitly relied upon in the complaint." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1140, 1426 (3d Cir. 1997). Such documents can include those attached to the complaint or exhibits. *See City of Pittsburgh v. West Penn Power Corp.*, 147 F. 3d 256 (3d Cir. 1998) ( matters of public record, and any undisputedly authentic document . . . if the plaintiff's claims are based on that document). *See Pension Benefit Guaranty Corp. v. White Consol. Industries, Inc.*, 998 F. 2d 1198 (3d Cir. 1998). In this case, both parties rely solely upon the Lease and Bank License Agreement to support their respective positions.

Despite the Defendants' contentions, Plaintiff posits that a review of the Bank Licensing Agreement demonstrates that in actuality it is a subletting to a subtenant even though it is cloaked in licensing language. For example, Plaintiff argues that on Exhibit A to the Bank Licensing Agreement it lists the Barnegat store as one of the stores where a bank will be located. In another section captioned "licensing fees" (Exhibit B to the Bank Licensing Agreement), the fees are allegedly related to square footage which is a customary provision in a sublease. More specifically, IBT must pay Safeway $40,200.00 (1-5 years), $45,000.00 (6-10 years) and $50,280.00 (11-15 years), and the square footage is expressed as "assumes branch facility footprint of 300 square feet or less. If the bank facility is larger than 300 square feet, the fees will be as set forth above for Barnegat and Bensalem." In the Complaint, Plaintiff alleges that the Barnegat facility is 375 square feet.

## II.

When reviewing a motion to dismiss on the pleadings, the court must "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F. 3d 223, 229 (3d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not facially plausible unless it has factual content sufficient to allow a court to reasonably draw the inference that defendant is liable for the alleged misconduct. *Id*. The touchstone of this analysis "is whether the parties' well-plead allegations can sustain the causes of action alleged." *See White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 384 n.6 (D.N.J. 2010). The Third Circuit summed it up as 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (*quoting Twombly*,

127 U.S. at 1965).

In examining a license agreement, the often cited framework is provided in *Thiokol*. Generally, whether a particular agreement is a lease or a license depends upon the intention of the parties as revealed by the language employed in establishing their relationship, and, where doubt exists, by the circumstances surrounding its making, as well as by the parties course of conduct. See *Thiokol Chemical Corp. v. Morris County Board of Taxation,* 41 N.J. 405 (1964). In *Thiokol*, Justice Francis distinguished the leasehold interest from other interests in land as follows:

> Ordinarily when a lease is made we find an agreement by the owner-lessor to turn over specifically-described premises to the exclusive possession of the lessee for a definite period of time and for a consideration commonly called rent. Although no absolute requirement exists for the use of particular words, the instrument is usually studded with terms (lacking here) such as "lease" "let," "demise," "grant" and the like.

*Id*. at 416. In other words, "a lease gives exclusive possession of the premises against all the world, including the owner . . . " *Id*. at 417. Whereas, a license conveys a far more limited right to its owner: merely, a right of use and occupancy in the licensee to the extent necessary to perform an agreement between the parties. That is, a license "gives occupancy so far as necessary to engage in the agreed acts or the performance of agreed services and no further . . ." *Id.* A license is simply a personal privilege to use the land of another in some specific way or for some particular purpose or act. *Sandyston v. Angerman*, 134 N.J .Super. 448, at 451 (App. Div. 1975).

To determine the legal effect of the Bank License Agreement, the Court must first look to the "intention of the parties as revealed by the language employed" in their lease. *Thiokol* at 417. Although the lease is signed by the landlord and tenant, the Bank Licensing Agreement was signed by the tenant and IBT without notice to the landlord. It is difficult to infer whether the Bank Licensing Agreement is a license under the terms of the lease when it was entered without the landlord's knowledge. Although the landlord appears to have acquiesced to the arrangement, since the Bank Licensing Agreement was in force for a 12 year period without objection, there is nothing that demonstrates that the landlord waived

his rights under the "pass-through" provision. In light of same, it is best to determine the sublet/license issue on summary judgment after discovery has been completed.

III.

The Defendants argue that the six year statute of limitations applies (N.J.S.A. 2:14-1). Within the ad damnum clause in the Complaint (subsection (a)), Plaintiff requests an accounting "for all sums received by any lessee by virtue of any sublease <u>at any time</u> . . ." (emphasis added). Despite the broad relief sought, the Complaint was filed on December 21, 2012, and the statute of limitations ends six years earlier. Any reasonable commercial developer would have known to review the lease to determine if the pass-through provision applied at the time that the bank commenced operations with the grocery store. The Plaintiff argues "the record is not developed to determine whether plaintiff discovered the default of the pass-through provision" (Section 11). The Court rejects that response, and finds that without alleging facts showing any substantive reason otherwise, the six year statute of limitation applies, and the alleged damages are limited to those within six years of the filing of the Complaint.

ORDER

This matter having been brought before the Court on a motion to dismiss (ECF No. 14); and the Court having considered the briefs of the parties and having heard oral argument;

IT IS on this 13th day of November, 2013

ORDERED the motion to dismiss is granted in part and denied in part. That is, the allegations of the Complaint may proceed except that the statute of limitations applies, and relief is limited to damages within six years of the filing of the complaint.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.